THE DEPARTMENT OF HUMAN RIGHTS, Plaintiff-Appellant, v. SHARON DAYTON *et al.*, Defendants-Appellees.

Fourth District   No. 4—87—0184

Opinion filed November 19, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellant.

Gary E. Kerr, of Kerr & Longwell, of Springfield, for appellee Sharon Dayton.

JUSTICE LUND delivered the opinion of the court:

In an administrative ruling, the Illinois Civil Service Commission (the Commission) granted the claim of Sharon Dayton regarding her layoff from the Illinois Department of Human Rights (the Department). The Department filed a complaint for administrative review, and, upon review, the circuit court of Sangamon County confirmed the decision of the Commission. The Department appeals. We reverse.

Sharon Dayton was employed with the Department in October 1980 as a human rights program administrator. During the summer of 1982, the Governor, by amendatory veto, reduced the appropriations for the Department. This required reductions in expenditures for the fiscal year starting July 1, 1982, and ending June 30, 1983. The Department made budgetary reductions and determined that it would be necessary to eliminate the position occupied by Dayton. The Department of Central Management Services approved the Department's plan, and Dayton was laid off effective September 27, 1982. Dayton appealed alleging the layoff was (1) based on racial discrimination, (2) in violation of the Department's own adverse impact analysis policy, and (3) in violation of the Department of Personnel rules in that the layoff was not due to lack of funds, a material change in duties, or organization, or lack of work, or the abolition of a State position. Dayton requested relief in the form of reinstatement with full compensation, including lost vacation time and salary increases.

From September 1982 until a hearing on October 17, 1984, various filings, including amended complaints, financial data, and fiscal plans, were submitted to the Commission. The hearing officer issued his findings, conclusions, and recommended decision on December 5, 1984. In terms of the issues raised by Dayton and enumerated above, the hearing officer found in favor of the Department. Because of the limited nature of this appeal, we need not attempt to analyze or judge the hearing officer's determination. Rather, this appeal stems from a separate allegation of impropriety which arose at the hearing.

During the October 17, 1984, hearing, information was brought forth relating to the improper filling of the position of human rights investigation supervisor. The investigation supervisor position was a position inferior by classification and salary to the position of human rights program administrator, the position held by Dayton. In turn, the position of human rights investigator II was inferior by classification and salary to that of investigation supervisor. Investigation supervisor was directly concerned with the position of human rights investigator II. If the investigation supervisor position was available at Dayton's layoff, by existing seniority rules, she would have been entitled to the job in preference to unemployment. During the period of time surrounding Dayton's layoff, an investigation supervisor position was vacant. However, an employment freeze, decreed by the Governor, was also in existence.

On March 15, 1982, the Department, by temporary assignment, placed Franklin Meredith in the investigation supervisor position. Meredith was an investigator II and continued to be paid at the investigator II salary. The Department tried to obtain an exemption to the hiring freeze in order to permanently fill the investigation supervisor position on four occasions, spanning a period from early 1982 until the date of the hearing. Each of these applications was denied. Temporary assignments are valid for only six months. (Ill. Rev. Stat. 1983, ch. 127, par. 63b108b.9.) This statute and its corresponding rule were violated as to Meredith, as he was still serving in the investigation supervisor position in October 1984.

The Commission was provided with a copy of the Governor's executive order implementing the hiring freeze, which reads as follows:

"Effective at the close of business today, November 12, 1980, no agency, department, bureau, board or commission subject to the control or direction of the Governor shall hire any employee, fill any vacancy, create any new position or take any other action which will result in increases, or the maintenance of present levels, in State employment, including personal service contracts. *All hiring is frozen.* There will be *no* exceptions to this order without my express permission after submission of appropriate requests to my office." (Emphasis in original.)

The issue of Meredith's improper occupation of the investigation supervisor position was decided without a hearing. Shortly after the hearing on October 17, 1984, in which the matter was first brought to the attention of the Commission, the Commission conducted a brief investigation. Thereafter, Bruce Finne, executive secretary of the Commission, authored a letter with findings and conclusions. It was sent

out on December 7, 1984, along with the hearing officer's determination as to the other issues raised by Dayton.

Finne concluded, in part, that Dayton was entitled to the investigation supervisor position if it was available, and he recognized the improper use of Meredith on an acting basis in violation of the Personnel Code. In spite of these conclusions, Finne's letter stated that the violation was not a proper reason to grant Dayton's appeal of her layoff:

> "The findings in this case identify a number of actions or factors to act on the part of the Respondent [the Department] which staff concludes to have been or to continue as violations of the Personnel Code. These the Commission must note and is obligated to direct compliance in the instance of the continuing violation as it pertains to Frank Meredith's continuing misassignment. In ruling upon the appeal of the Petitioner [Dayton], however, the issue is whether in the layoff of the Petitioner the provision of the Personnel Code or of the Rules of the Department of Central Management Services have not been complied with (Ill. Rev. Stat. 1983, ch. 127, par. 63b110(12)). The staff is of the further view that Executive Order No. 5 (1980), Hiring Freeze, is binding upon the Respondent, the Department of Central Management Services, and this Commission. Within the context of the governing Statutes, Rules, and Executive Order, staff has been unable to identify a violation which specifically impacts upon the validity of the action to lay off the Petitioner. Accordingly, staff finds no basis for granting the appeal of the Petitioner."

The Commission on December 19, 1984, issued its decision on both matters. It adopted the recommendation of the hearing officer, but added the following paragraph:

> "With respect to the issue of the right of the Petitioner to the position of Human Rights Investigations Supervisor filled on an acting basis by Frank Meredith, the Respondent has filled that position on an acting basis in violation of the Executive Order as well as the Personnel Code and Rules. Therefore, failure to have received an approved freeze exception is not a defense against reemployment of the Petitioner. The appeal of Petitioner, Sharon Dayton, is granted."

The apparent result was that the Commission agreed with the hearing officer's determination that the Department was justified in eliminating Dayton's position on the basis of lack of funds. However, the Commission determined that the violation of the Personnel Code with Meredith affected Dayton in such a way as to make her layoff improper.

On January 21, 1985, the Department filed a complaint in administrative review in the circuit court of Cook County seeking judicial review of the Commission's order granting Dayton's appeal. The action was subsequently transferred to the circuit court of the Seventh Judicial Circuit in Sangamon County, Illinois. On February 9, 1987, the circuit court of Sangamon County entered an order by docket entry affirming the ruling of the Commission finding that the decision was not against the manifest weight of the evidence and was not contrary to law. On March 10, 1987, the Department filed a notice of appeal from the February 9, 1987, order of the circuit court.

On July 24, 1987, Dayton, pursuant to Supreme Court Rule 362 (107 Ill. 2d R. 362), moved our court to amend her letters of complaint by the addition of a "Second Amendment" to the letters of complaint. The amendment seeks to add to Dayton's allegations contained in the previous letters of complaint the allegation that the Department did not offer her reduction to the position of human rights investigation supervisor in lieu of layoff, and, further, misrepresented to her and the Commission the employment rights she had. Attached to the amended letters of complaint was a copy of a memorandum from the office of the Governor, dated January 12, 1981. It explained the parameters of the Governor's hiring freeze and states, in part:

> "After a review of the freeze on hiring established by Executive Order Number 5 on November 12, 1980, the Governor has decided that the freeze will be extended. During the first 60 days of the freeze we have had an opportunity to review the procedures for requesting exception to the freeze and have developed the following guides for requesting personnel actions in the future.
>
> Effective January 19, request for exception will be required for the following actions.
>
> 1. All appointments.
> 2. All promotions not covered in items 4, 5 and 6 below.
> 3. All inter-agency transfers.
> 4. All personal service contracts (contracts with an individual or firm to provide personal service).
>
> Requests for exception are no longer required for the following actions.
>
> 1. Allocation changes.
> 2. Job assignments—intra-agency transfers."

The Department filed objections to the motion to amend the letters of complaint.

We have allowed the motion to amend pursuant to Supreme Court

Rule 362 (107 Ill. 2d R. 362) over the objection of the Department.

Dayton points out that requests for exceptions to the hiring freeze were no longer necessary after January 12, 1981, for:

"1. Allocations changes.

2. Job assignments—intra-agency transfers."

Based on this fact, Dayton argues that she could have been transferred to the investigation supervisor position without an exception from the hiring freeze. This is possibly a correct analysis of the January 12, 1981, directive, but such a procedure would not have accomplished the required result, that of a substantial reduction in cost.

There is no question but that the Personnel Code and the implementing rules were violated by Meredith's continued occupation of the investigation supervisor position. However, we recognize the overall plan involved the reduction of costs. The Department was entitled to determine where costs could be reduced with minimum damage to the function of the agency. Meredith's old position as an investigator was not filled. His salary was not raised. If Dayton had been reduced to the investigation supervisor position, Meredith would have still been on the payroll as an investigator. The savings would have been the difference between the program administrator's salary and the salary of the investigation supervisor.

While we recognize the Personnel Code violation, we conclude that it was improper to connect the Dayton layoff with the Meredith placement. A contrary result would be an extension of rules in such a manner as to interfere with agency fiscal decisions. State agencies must be able to form policies so as to comply with budgeting requirements.

As determined by the Commission, there was no valid evidence of racial or sexual discrimination against Dayton. There appears to be no evidence of a reason for the layoff other than those related to fiscal responsibility. The failure to offer the investigation supervisor position to Dayton while improperly filling that position was not shown to be a subterfuge to circumvent Dayton's employment rights. The decision of the Commission was against the manifest weight of the evidence.

For the reasons herein stated, we reverse. Dayton's appeal should be denied. Circuit court reversed and Civil Service Commission reversed.

Reversed.

GREEN and KNECHT, JJ., concur.